**ROBERT M. BEGGS** (SBN: 232834)
**THE BEGGS LAW FIRM, APC**
3151 Airway Ave., S-1
Costa Mesa, California 92626
P | (949) 878-3773  F | (949) 608-1741
E-Mail: robert@thebeggslawfirm.com

**RICHARD A. CRITES (SBN 204639)**
**THE CRITES LAW FIRM**
1201 Puerta Del Sol, Ste. 310
San Clemente, CA 92673
P | (949) 940-8028  F | (866) 562-4432
E-Mail:  richard@crites-law.com


Attorneys for Plaintiff,
**MICHELLE GONSALVES**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DVISION

| | |
|---|---|
| **MICHELLE GONSALVES**, on behalf of herself and all others similarly situated,<br><br>Plaintiff(s),<br><br>vs.<br><br>**CONAIR CORPORATION,** a Delaware Corporation,<br><br>Defendant(s). | **CASE NO.:**   8:21-cv-00138<br><br>Judge:<br>Department:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff **MICHELLE GONSALVES** ("Plaintiff"), by and through her undersigned attorneys, bring this action on behalf of herself and all others similarly situated, on personal knowledge of her activities and on information and belief as to all other matters against Defendant **CONAIR CORPORATION** ("Defendant"), and allege as follows:

///

///

## NATURE OF THE ACTION

1.      This is a consumer class action on behalf of all owners of Cuisinart Digital AirFryer Toaster Ovens Model Number TOA-65 (hereinafter the "AirFryers") who have been denied the full use and value of their machines, and/or suffered damage and/or injury to themselves and/or their property due to excessive heat emanating from the machine.

2.      All of the claims asserted herein arise out of Defendant's advertising, promoting, marketing, distributing, selling, and warranting of the AirFryers. The AirFryers, designed and/or manufactured by Conair Corporation, and sold under the Cuisinart brand name are defective in that they do not include proper or sufficient shielding to prevent burn damage to nearby surfaces despite full compliance by Plaintiff and similarly situated consumers with the "Before First Use" directions and installation of the Quick Reference Guide.

3.      Millions of AirFryers emanate excessive heat behind and on top of the units, causing damage to the area where they are operated and to the owners themselves.

4.      Millions of AirFryers were purchased based on Defendant's affirmative misrepresentations that units were safe to use as described on the packaging and in advertising.  Instead, consumers and their property have been damaged due to the machines' excessive external heat.

5.      Defendant's misrepresentations about the usability of the machines has deceived and harmed consumers. Consumers relied on Defendant's representation that their AirFryers were safe to use. Had consumers known that ordinary use on a countertop could damage the surrounding cabinets, counters, and walls, then consumers would have paid far less for those machines or not purchased them at all. As a consequence, Plaintiff and all other members of the Class (as defined below) have suffered an ascertainable loss and thus have a private right of action against Defendant for damages.

///

**CLASS ACTION COMPLAINT**

6. By virtue of numerous consumer complaints Defendant has known of the Defect in the AirFryers for years and has taken no action to warn consumers, or to repair or replace the defective machines.

7. Defendant's conduct violates well-established contract, tort and consumer protection laws in California and other states.

8. Plaintiff brings this action on behalf of herself and other similarly-situated consumers and seeks damages and appropriate equitable relief, including an order enjoining Defendant from selling these defective AirFryers.

## JURISDICTION AND VENUE

9. This court has original jurisdiction pursuant to 28 U.S.C. § 1332(d) because Plaintiff is from a different state than Conair, the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and the proposed class consists of more than 100 members.

10. This Court has personal jurisdiction over Defendant because Defendant is a corporation registered to do business in California under California Corporation number C3013671, because Defendant conducts substantial business in California and has systematic and continuous contact within California.

11. Venue is proper in the Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District and Plaintiff resides in Orange County.

## PARTIES

12. Plaintiff **MICHELLE GONSALVES** is an individual residing in the state of California. Plaintiff owns one of the AirFryers and as a result of Defendant's misrepresentations, suffered injury in fact and suffered an ascertainable loss in the form burn damage to her marble backsplash.

13. Defendant Conair Corporation is a New Jersey corporation with its principal place of business at 150 Milford Road, East Windsor, NJ 08520. Cuisinart is a wholly-owned subsidiary of Conair Corporation with its principal place of business at 150

**CLASS ACTION COMPLAINT**

Milford Road, East Windsor, NJ 08520.  Conair Corporation is registered to do business in California under California Corporation number C3013671.

## **FACTUAL ALLEGATIONS**

14.    In or about April 2020, Plaintiff purchased the AirFryer on Amazon.  It was delivered on April 29 and installed on May 1, 2020.  Plaintiff paid a purchase price of $204.71.  The model number of the AirFryer is TOA-65.

15.    Prior to the purchase, Plaintiff did substantial research to find a toaster-oven/air fryer that was both high quality and aesthetically pleasing.  Research revealed a few manufacturers with the highest survey ratings.  Plaintiff chose the AirFryer both because of these ratings and Cuisinart's brand reputation.

16.    Prior to its first use, Plaintiff carefully followed the installation instructions contained in the Cuisinart Instruction and Recipe Booklet ("Instructions") since they had recently completed remodeling their kitchen and installing expensive, high-end marble countertops and back-splash.  The Instructions provide as follows under the heading "Before first Use": (1) Place your digital Airfryer Toaster Oven on a flat, level surface; (2) Move oven 2 to 4 inches from the wall or any objects on the countertop.  Do not use on heat sensitive surfaces; (3) Check that Crumb Tray is in place and that there is nothing in the oven; (4) Insert Quick Reference Guide on the bottom side of the unit; (5) Plug power cord into the wall outlet.

17.    Plaintiff (i) installed the AirFryer on top of her flat, level countertop; (ii) measured and situated the AirFryer a distance of 4 inches from the wall (beyond the guides on the rear of the unit); (iii) checked the Crumb Tray to confirm it was still inside and that there was nothing in the oven; (iv) inserted the Quick Reference Guide; and (v) plugged the power cord into the wall.

18.    On June 15, 2020, Plaintiff identified a burn to the marble back-splash on the wall behind the AirFryer that did not exist prior to installation of the AirFryer and only appeared after use of same.

///

**CLASS ACTION COMPLAINT**

19.     On June 17, 2020, Plaintiff contacted Cuisinart, informed them of the burn damage and requested repair of same.  On June 18, 2020, Defendant responded by offering only to repair and/or replace the AirFryer.

20.     Defendant is one of the world's leading manufacturers, designers, and marketers of kitchen appliances.

21.     Upon information and belief, Defendant has worked to earn a reputation for selling premium products, both through its marketing efforts and by manufacturing consistently high quality and versatile goods.  Consequently, consumers are frequently willing to pay more for Cuisinart brand products than for the products offered by competitors, even when the products have similar features.  Consumers have come to expect that Cuisinart brand products will be of particular high quality, durability and reliability.

22.     The AirFryer is sold through major retailers, including Crate & Barrel, Target, and Best Buy at premium prices in the range of $270-$300.

23.     Before placing the AirFryer in the stream of commerce, Defendant had actual knowledge that they contained defects and created an unreasonable risk of injury and property damage.

24.     Defendant's actions related to designing, testing, manufacturing, selling, distributing and warranting the AirFryer have caused Plaintiff and other putative class members to suffer property loss, financial harm, loss of use and other damages.

25.     In choosing the AirFryer, Plaintiff relied on Defendant's representations in its product description about ease of use.  She relied to her detriment on Defendant's representations because the AirFryer could not be used where and as intended due to excessive external heating.

///

///

///

**CLASS ACTION COMPLAINT**

## CLASS ALLEGATIONS

26.     Plaintiff brings this action on behalf of herself and members of a National Class and, in the alternative, for the subclass of the State of California as defined below:

**National Class:**

During the fullest period allowed by law, all persons in the United States who purchased or otherwise acquired a Cuisinart designed and/or manufactured Digital AirFryer Toaster Oven for personal, family, or household purposes having the Defects and who have incurred property damage and/or loss of use and/or loss of the benefit of the bargain as a result of the Defects.

**California Subclass:**

During the fullest period allowed by law, all persons in the United States who purchased or otherwise acquired a Cuisinart designed and/or manufactured Digital AirFryer Toaster Oven  in the State of California for personal, family, or household purposes having the Defects and who have incurred property damage and/or loss of use and/or loss of the benefit of the bargain as a result of the Defects.

27.     Excluded from the Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Conair and any entity in which it has a controlling interest, or which has a controlling interest in Conair; (c) the officers and directors of Conair; (d) Conair's legal representatives, assigns, and successors; and (e) all persons who properly execute and file a timely request for exclusion from the Class.

28.     This action has been brought and may properly be maintained on behalf of the Class proposed above under the criteria of *Federal Rule of Civil Procedure* 23 ("Rule 23"), as the Class meets all of the requirements of Rule 23:

a.     *Numerosity*: The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes that the proposed Class contains hundreds of thousands of customers who have been damaged by Defendant's misrepresentations as alleged herein. The precise number of Class members

is unknown to Plaintiff. The true number of Class members is known by Defendant, however, and thus potential class members may be notified of the pendency of this action by first class mail, electronic mail, and/or published notice.

        b.    ***Existence and Predominance of Common Questions of Law and Fact***: This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. Common questions of law and fact include, but are not limited to, the following:

        i.    Whether Defendant's AirFryers were defectively designed, manufactured, marketed, distributed and/or sold;

        ii.    When Defendant first became aware of should have become aware that its AirFryers were defectively designed and/or manufactured;

        iii.    Whether the existence of the Defect in the AirFryers is a material fact that reasonable purchasers would have considered in deciding whether to purchase an AirFryer;

        iv.    Whether Defendant knowingly concealed the defective nature of the class AirFryers;

        v.    Whether Defendant intended that consumers be misled;

        vi.    Whether Defendant intended that consumers rely on its non-disclosure of the Defects in the AirFryers;

        vii.    Whether Defendant misrepresented the usefulness of the AirFryers;

        viii.    Whether, by the misconduct set forth herein, Defendant violated consumer protection statutes and/or false advertising statutes and/or state deceptive business practices statutes;

        ix.    Whether the AirFryers are of merchantable quality;

        x.    Whether, by the misconduct set forth herein, Defendant violated express and implied warranty statutes;

///

**CLASS ACTION COMPLAINT**

xi.    Whether Defendant's false and misleading statements of material facts regarding the AirFryer were likely to deceived the public;

xii.    Whether consumers have suffered and ascertainable loss;

xiii.    The nature and extend of damages and other remedies entitled to the Class;

xiv.    Whether the AirFryers designed and/or manufactured by Defendant pose any material defect;

xv.    Whether Defendant knew, or should have known, that the AirFryers contained the Defects when it placed them into the stream of commerce;

xvi.    Whether Defendant concealed the Defects from consumers;

xvii.    Whether Defendant breached warranties relating to the AirFryers by failing to recall, replace, repair and/or correct the Defects;

xviii.    Whether Defendant breached the implied warranties of merchantability relating to the AirFryers;

xix.    Whether Defendant misrepresented the characteristics, qualities, and capabilities of the AirFryers;

xx.    Whether Defendant omitted, concealed from and /or failed to disclose in its communications and disclosures to Plaintiff and Class Members material information regarding the Defects;

xxi.    Whether Defendant failed to warn consumers regarding the Defects in its AirFryers;

xxii.    Whether Defendant made fraudulent, false, deceptive, misleading and/or otherwise unfair and deceptive statements in connections with the sale of the AirFryers in its literature and on its website, including those relating to standards and use and otherwise engaged in unfair and deceptive trade practices pertaining to the AirFryers;

///

///

**CLASS ACTION COMPLAINT**

xxiii.    Whether Defendant was unjustly enriched as a result of selling the AirFryers;

xxiv.    Whether Defendant should be ordered to disgorge all or part of its profits it received from the sale of the AirFryers;

xxv.    Whether Plaintiff and Class Members are entitled to damages including compensatory, exemplary, and statutory damages and the amount of such damages;

xxvi.    Whether Plaintiff and Class Members are entitled to repair and/or replacement of their respective AirFryers;

xxvii.    Whether Plaintiff and Class Members are entitled to equitable relief, including an injunction requiring Defendant to engage in a recall of the AirFryers; and,

xxviii.    Whether Plaintiff and Class Members are entitled to an award of reasonable attorneys' fees, pre-judgment interest, post-judgment interest, and costs.

c.    ***Typicality***: Plaintiff's claims are typical of the claims of the other members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

d.    ***Adequacy of Representation***: Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

e.    ***Superiority***: A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them by Defendant. Furthermore,

**CLASS ACTION COMPLAINT**

individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding and presents no unusual management difficulties under the circumstances here.

## **TOLLING AND ESTOPPEL OF STATUES OF LIMITATIONS**

29.    The claims alleged herein accrued upon discovery of the defective nature of the AirFryers. Because the Defects alleged herein were not disclosed by Defendant and because Defendants took steps to either conceal or fail to disclose the true character, nature, and quality of the AirFryers, Plaintiff and Class Members did not discover and could not have reasonably discovered the Defects through reasonable and diligent investigation.

30.    Any applicable statutes of limitations have been tolled by Defendant's knowledge and actual misrepresentations and/or concealment and denial of the facts as alleged herein, which concealment is ongoing. Plaintiff and Class Members could not have reasonably discovered the true defective nature of their AirFryers until such time as the Defects manifested by failing in the ways described herein. As a result of Defendant's active concealment of the Defects and/or failure to inform Plaintiff and Class Members of the Defects, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

31.    Alternatively, the facts alleged above give rise to estoppel. Defendant has actively concealed the defective nature of the AirFryers. Defendant was and is under a continuous duty to disclose to Plaintiff and Class Members the true character, quality, and nature of the AirFryers and particularly that they posed a severe risk of property and other damages. At all relevant times and continuing to this day, Defendant knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the AirFryers. Given Defendant's failure to disclose this non-public information about the defective nature of the AirFryers—information over which it had exclusive control—and because Plaintiff and Class Members could not reasonably have known that

**CLASS ACTION COMPLAINT**

the AirFryers were thereby defective, Plaintiff and Class Members reasonably relied on Defendant's affirmative and/or ongoing concealment. Based on the foregoing, Defendant is estopped from prevailing on any statute of limitations defense in this action.

32.    Additionally, Defendant is estopped from raising any defense of laches due to its own unclean hands as alleged herein.

## FIRST CLAIM

(Unjust Enrichment)

33.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 32, and incorporates the same herein by reference as though fully set forth below.

34.    As described above, Defendant sold AirFryers to Plaintiff and Class Members even though those ovens were defective. Defendant failed to disclose the Defects at the point of sale or otherwise.

35.    Defendant unjustly refuses to repair or recall the AirFryers in spite of the Defects that it has long known about.

36.    As a result of its acts and omissions related to the Defects, Defendant obtained monies that rightfully belong to Plaintiff and Class Members.

37.    Defendant appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and Class Members who, without the knowledge of the Defects, paid a higher price for their AirFryers than those ovens were worth. Defendant also received monies for those ovens that Plaintiff and Class Members would not have otherwise purchased.

38.    Defendant's retention of these wrongfully-acquired profits violates fundamental principles of justice, equity, and good conscience.

39.    Plaintiff and Class Members seek restitution from Defendant and an order proportionally disgorging all profits, benefits, and compensation obtained by Defendant from its wrongful conduct, and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

**CLASS ACTION COMPLAINT**

## SECOND CLAIM

(Breach of Implied Warranty)

40.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 39, and incorporates the same herein by reference as though fully set forth below.

41.    The implied warranty of merchantability included with the sale of each AirFryer means that Defendant warranted that the AirFryers would be merchantable, fit for their ordinary purposes for which countertop ovens are used, pass without objection in the trade, be of fair and average quality, and conform to promises and affirmations of fact made on the container and label. This implied warranty of merchantability is part of the basis for the benefit of the bargain between Defendant and Plaintiff and Class Members.

42.    At the time of delivery, however, Defendant breached the implied warranty of merchantability because its AirFryers were defective as alleged herein, would not pass without objection, were not fit for normal use in a residential setting, and failed to conform to the standard of like products in the trade.

43.    Within a reasonable amount of time after the Defects manifested in Plaintiff's and Class Members' AirFryers, Defendant received notice of its breach of implied warranty by virtue of its knowledge of the Defects. Defendant knew or, in the exercise of reasonable care, should have known that the AirFryers were defective prior to sale of these ovens to Plaintiff and Class Members.

44.    Any implied warranty limitation cannot be enforced here because it is unconscionable. A substantial disparity in the parties' relative bargaining power existed such that Plaintiff and Class Members were unable to derive a substantial benefit from their warranties. A disparity existed because Defendant was aware that its AirFryers were inherently defective; Plaintiff and the Class had no notice or ability to detect the problem; Defendant knew that Plaintiff and the Class had no notice or ability to detect the problem; and Defendant knew that Plaintiff and Class Members would bear the cost of correcting any defect. In this case, the disparity was increased by Defendant's knowledge that

**CLASS ACTION COMPLAINT**

failure to disclose that the Defects would substantially limit the AirFryer's use and could cause it to fail altogether.

45.     The element of privity, if applicable here, exists because Defendant had direct written communications with Plaintiff and Class Members regarding their AirFryers in the form or warranty forms, manuals, registration cards, communications regarding defect failures, or similar documents. Defendant advertised the AirFryers via direct communications with Plaintiff and Class Members through television, internet, and magazine advertisements and the like. The dealers who sold the AirFryers to Plaintiff and Class Members are Defendant's agents. Defendant entered into contracts with Plaintiff and Class Members through warranties, including extended warranties; and Plaintiff and Class Members are third-party beneficiaries of warranties that ran from Defendant to their dealer-agents. Further, Defendant designed and/or manufactured the AirFryers, intending Plaintiff and Class Members to be the ultimate users of these appliances.

46.     As a direct and proximate result of Defendant's breach of its implied warranties, Plaintiff and Class Members purchased defective products which could not be used for their intended use in, among other things, on the counter in a residential setting, and thus have been damaged. Plaintiff and Class Members seek damages in an amount to be determined at trial.

## THIRD CLAIM

(Injunctive and Declaratory Relief)

47.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 46, and incorporates the same herein by reference as though fully set forth below.

48.     There is a controversy between Defendant and Plaintiff and other Class Members concerning the existence of the Defects in the AirFryer.

49.     Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

50.     Accordingly, Plaintiff and Class Members seek a declaration that these AirFryers have a common defect(s) in their design/manufacture.

51.     Additionally, Plaintiff and Class Members seek a declaration that this common defect poses a serious risk to consumers and the public.

52.     Defendant designed, manufactured, produced, tested, inspected, marketed, distributed, and/or sold ovens which contain material defects as described herein. Based upon information and belief, Defendant continues to design, manufacture, produce, test, inspect, market, distribute, and sell ovens which contain the serious defects as described herein.

53.     Based upon information and belief, Defendant has taken no corrective action concerning the Defects described herein. Defendant has failed to issue a recall or institute any action to remedy the Defects.

54.     Plaintiff and the Class have suffered actual damages related to the Defects described herein. Defendant should be required to take corrective action to prevent further failures caused by the Defects including (a) summoning a nationwide recall of the AirFryer, (b) issuing warnings and/or notices to the consumer and the Classes concerning the Defects, and (c) immediately discontinuing the manufacture, production, marketing, distribution, and sale of the defective AirFryer described in this Complaint.

## **FOURTH CLAIM**

### (Strict Product Liability)

55.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 54, and incorporates the same herein by reference as though fully set forth below.

56.     Defendant is engaged in the business of designing, manufacturing, distributing, advertising, marketing, promoting, and/or selling kitchen essentials and appliances and did design, manufacture, distribute, advertise, market, promote, and/or sell the AirFryers described herein.

///

57.     Defendant's AirFryers were expected to and did reach Plaintiff and Class Members without substantial change in the condition in which they were manufactured, sold, and distributed.

58.     The AirFryers were in a defective condition when they left Defendant's possession or control in that, under normal conditions, usage, and applications, they could not be used they were intended.

59.     Plaintiff and Class Members used the AirFryers in a manner reasonably intended by Defendant.

60.     The AirFryers are defective because they are not fit for ordinary and intended use; Defendant failed to provide Plaintiff and Class Members, either directly or indirectly, with adequate and sufficient warnings regarding the known and foreseeable risks inherent in and related to the ovens; the AirFryers contained material design defects and were not reasonably fit for their intended use due to such defects; the design, methods of manufacture and testing of the AirFryers did not conform to generally-recognized and prevailing standards or state of the art in existence at the time the design was made and when the AirFryers were manufactured; and at the time the AirFryers left Defendant's control, the foreseeable risks associated with their design exceeded the benefits associated with the design.

61.     Plaintiff and Class Members have suffered property damage and other incidental and consequential damages as a direct and proximate result of the Defects.

62.     Defendant acted with malice, oppression and/or fraud, and in conscious and flagrant disregard to the rights of their consumers by manufacturing and selling the AirFryers known to be defective. As alleged, Defendant knew or should have known that the Defects would cause their ovens to fail and to damage other property. Defendant knew or was repeatedly informed of the serious defects, yet failed to take any remedial action and instead continued to sell these defective products. Given Defendant's conscious disregard for the rights of the public, Plaintiff and Class Members seek exemplary or punitive damages.

**CLASS ACTION COMPLAINT**

## FIFTH CLAIM

(Fraudulent Concealment)

63.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 62, and incorporates the same herein by reference as though fully set forth below.

64.     Defendant concealed material facts from Plaintiff, Class Members, and the public generally. Defendant knew that its AirFryers contained the Defects and concealed those facts such that consumers had no such knowledge.

65.     Defendant had a duty to disclose the Defects to Plaintiff and Class Members, but it failed to do so.

66.     Defendant also knew that Plaintiff and Class Members had no knowledge that the AirFryers were defective and that they—the consumers of the AirFryers— did not have an equal opportunity to discover those facts. Defendant was in a superior position than Plaintiff and Class Members.

67.     Plaintiff and Class Members would not have purchased their AirFryers had they known that the refrigerators were defective or Plaintiff and Class Members would not have paid as much as they did. Defendant benefited from the sales of the AirFryers as a result of its nondisclosure.

68.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered damages.

69.     Defendant's conduct was knowing, intentional, malicious, demonstrated a complete lack of care, and was carried out in reckless disregard of the rights of Plaintiff and Class Members such that punitive damages are appropriate.

///

///

///

**CLASS ACTION COMPLAINT**

## SIXTH CLAIM

(Violation of The Consumer Legal Remedies Act

Cal. Bus. & Prof. Code § 17500, *et seq.*)

70.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 69, and incorporates the same herein by reference as though fully set forth below.

71.     Defendant is "person" under Cal. Civ. Code § 1761(c).

72.     Plaintiff and the Class are "consumers", as defined by Cal. Civ. Code § 1761(d), who purchased or leased one or more AirFryers.

73.     The California Legal Remedies Act ("CLRA") prohibits "'unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770(a). Defendant has engaged in unfair or deceptive acts or practices that Violated Cal. Civ. Code § 1750, *et seq.*, as described above and below by, at a minimum, representing that AirFryers have characteristics, uses, benefits, and qualities which they do not have; representing that AirFryers are of a particular standard, quality, and grade when they are not; advertising AirFryers with the intent not to sell or lease them as advertised.

74.     Defendant sold AirFryers to Plaintiff and the Class even though those ovens contained the Defects and Defendant knew of the Defects.  Defendant never told Plaintiff or the Class about the Defects at the point of sale or otherwise.

75.     Plaintiff and the Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the Class Members who purchased or leased the AirFryers would not have purchased or leased them at all or would have paid significantly less for them. Plaintiff and the Class also suffered diminished value of their AirFryers as well as lost or diminished use.

///

**CLASS ACTION COMPLAINT**

76.     Defendant had a duty to all its customers to refrain from unfair and deceptive and unfair acts and practices made in the course of Defendant's business.

77.     As a direct and proximate result of Defendant's violations of the CLRA, Plaintiff and the Class have suffered injury-in-fact and/or actual damages.

78.     Under Cal. Civ. Code § 1780(a), Plaintiff and the Class seek monetary relief against Defendant measured in diminution of the value of their ovens caused by Defendant's violations of the CLRA as alleged herein.

79.     Under Cal. Civ. Code § 1780(b), Plaintiff and the Class seek an additional award against Defendant of up to $5,000 for each Class Member who qualifies as a "senior citizen" or "disabled person" under the CLRA. Defendant knew or should have known that their conduct was directed to one or more Class Members who are senior citizens or disabled persons. Defendant's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal and family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person. One of more of the Class Members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them has suffered substantial physical, emotional, or economic damages resulting from Defendant's conduct.

80.     Plaintiff and the Class also seek punitive damages because it carried out reprehensible conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiff and the Class to potential cruel and unjust hardship as a result. Defendants intentionally and willfully deceived Plaintiff and the Class and concealed material facts that only Defendant knew. Defendant's conduct constitutes malice, oppression, and fraud warranting punitive damages under Cal. Civ. Code § 3294.

81.     Plaintiff and the Class further seek an order enjoining Defendant's unfair or deceptive acts or practices, restitution, punitive damages, costs of court, attorneys' fees

///

under Cal. Civ. Code § 1780, and any other just and proper relief available under the CLRA. 189.

82.    Pursuant to the provisions of the CLRA, Plaintiff are providing notice of the Defects to Defendant and upon expiration of the period described in Cal. Civ. Code § 1782(d), Plaintiff will amend this Complaint to state a claim for damages under the CLRA.

## SEVENTH CLAIM

(Violation of The California Unfair Competition Law

Cal. Bus. & Prof. Code § 17200, *et seq*.)

83.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 82, and incorporates the same herein by reference as though fully set forth below.

84.    The California Business and Professions Code § 17200 prohibits any "unlawful, unfair, or fraudulent business acts or practices." Defendant has engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL. In particular, Defendant sold AirFryers to Plaintiff and the Class even though the ovens contained Defects and Defendant failed to disclose its knowledge of the Defects at the point of sale or otherwise.

85.    Defendant's acts and practices also constitute fraudulent practices in that they are likely to deceive a reasonable consumer. As described above, Defendant knowingly concealed that its AirFryers are designed and/or manufactured without proper shielding and Defendant continues to fail to disclose the Defects at the point of sale or otherwise. Had Defendant disclosed this information, Plaintiff and the Class Members would not have purchased the AirFryers or would have paid significantly less for them.

86.    Defendant's conduct also constitutes unfair business practices for at least the following reasons:

///

///

a.    The gravity of potential harm to Plaintiff and the Class Members as a result of Defendant's acts and practices far outweighs any legitimate utility of Defendant's conduct;

b.    Defendant's conduct is immoral, unethical, oppressive, unscrupulous, or potentially injurious to Plaintiff and the Class; and,

c.    Defendant's conduct undermines or violates stated policies underlying the UCL—to protect consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace.

87.    As a direct and proximate result of Defendant's business practices described herein, Plaintiff and Class Members suffered a foreseeable injury-in-fact and lost money or property because they purchased or paid for AirFryers that, had they known of the Defects, they would not have purchased or, in the alternative, they only would have purchased for a lower amount.

88.    Plaintiff and Class Members are entitled to equitable relief, including an order directing Defendant to disclose the Defects in the AirFryer; to provide restitution and disgorgement of all profits paid to Defendant as a result of its unfair, deceptive, and fraudulent practices; to pay reasonable attorneys' fees; and to be permanently enjoined from such practices.

## EIGHTH CLAIM

(Violation of The Song-Beverly Consumer Warranty Act

Breach of Implied Warranty of Merchantability

Cal. Civ. Code §§ 1791.1 and 1792)

89.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 88, and incorporates the same herein by reference as though fully set forth below.

90.    Plaintiff and the other Class Members who purchased or leased the AirFryers are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

///

91.    The AirFryers are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

92.    Defendant is "manufacturer" within the meaning of Cal. Civ. Code § 1791(j).

93.    Defendant impliedly warranted to Plaintiff and the other Class Members that its AirFryers were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792, however, the AirFryers do not have the quality that a buyer would reasonably expect.

94.    California Civil Code § 1791.1 states: "Implied warranty of merchantability or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

   (1)    Pass without objection in the trade under the contract description.

   (2)    Are fit for the ordinary purposes for which such goods are used.

   (3)    Are adequately contained, packaged, and labeled.

   (4)    Conform to the promises or affirmations of fact made on the container or label.

95.    The AirFryers would not pass without objection in the residential appliance trade because they were designed and/or manufactured with the Defects that cause the AirFryers to emit excessive heat.

96.    Because of the Defects, the AirFryers are not in merchantable condition and thus not fit for ordinary purposes.

97.    The AirFryers are not adequately labeled because the labeling fails to disclose the Defects.

98.    Defendant breached the implied warranty of merchantability by manufacturing and selling AirFryers containing Defects that are directly contrary to Defendant's marketing of the Ovens.

///

///

**CLASS ACTION COMPLAINT**

99.     Furthermore, the Defects have caused Plaintiff and the other Class Members to not receive the benefit of their bargain and have caused the AirFryers to depreciate in value.

100.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the Class Members received goods whose defective condition substantially impairs the goods' value. Plaintiff and the other Class Members have been damaged as a result of the diminished value of the AirFryers.

101.    Pursuant to Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiff and the other Class Members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their AirFryers or the overpayment for or diminution of value of their AirFryers.

102.    Pursuant to Cal. Civ. Code § 1794, Plaintiff and the other Class Members are entitled to costs and attorneys' fees.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff prays for relief against Defendants as follows:

1. Certifying the Class as requested herein;

2. Appointing Plaintiff as Class Representative and her undersigned counsel as Class Counsel;

3. Awarding Plaintiff and the proposed Class members damages;

4. Awarding Plaintiff and the proposed Class restitution, disgorgement, or other equitable relief as the Court deems proper;

5. An order requiring Defendant to adequately disclose and repair or replace the defective AirFryers;

6. An order (a) issuing a nationwide recall of the AirFryers; (b) issuing warnings and/or notices to consumers and Class Members concerning the Defects; and (c) immediately discontinuing the manufacture, production, marketing, distribution, and sale of the defective AirFryers described in this Complaint;

7. Awarding attorneys' fees and costs;

8.  Awarding Plaintiff and the Class Members pre-judgment and Post-judgment interest as allowed by law; and,

9.  Providing such further relief as may be just and proper.

### <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Fed. R. Civ. Proc. 38(b), Plaintiff and the Class hereby request a jury trial on all claims so triable.

**DATED:** January 15, 2021

**THE PLAINTIFF LAW FIRM, APC**

**THE CRITES LAW FIRM**

By _____

Robert M. Plaintiff, Esq.
Richard A. Crites, Esq.
Attorneys for Plaintiff,
**MICHELLE GONSALVES**

**CLASS ACTION COMPLAINT**